IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FERNANDO GONZALEZ GUTIERREZ, )<br>)<br>Petitioner, )<br>v. )<br>)<br>C. CARTER, Warden, FCI-Leavenworth; )<br>SAMUEL OLSON, ICE Field Office Director; )<br>TODD LYONS, ICE Acting Director; )<br>KRISTI NOEM, DHS Secretary; and )<br>PAMELA BONDI, Attorney General, )<br>)<br>Respondents. )<br>)<br>_____) | Case No. 25-3233-JWL |

## **MEMORANDUM AND ORDER**

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **December 12, 2025**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of Mexico. Petitioner entered the United States in 2023. In November 2023, petitioner was convicted in federal court of a drug offense. On November 6, 2024, upon his release from federal custody, petitioner was taken into custody by immigration officials, and removal proceedings were initiated. On March 31, 2025, petitioner was ordered removed but granted deferral of removal to Mexico, meaning he could only be removed to an alternative third country. Petitioner is presently detained

within this judicial district. On October 29, 2025, petitioner filed the instant habeas action; respondents have filed a response to the petition, petitioner has filed a reply brief, and the matter is therefore ripe for ruling.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Petitioner's removal period began on March 31, 2025, the date of his deferral order, as both parties had waived any appeal. *See id.* § 1231(a)(1)(B)(i). Specifically, petitioner claims that, after more than six months since the beginning of the removal period, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D.

Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" in his case. The Court disagrees with respondents' contention that petitioner can point to nothing more than the failure to effect his removal within six months. Petitioner remains detained more than eight months since his removal order became final, a significant period beyond the presumptively-reasonable period of six months. Petitioner also cites the fact that, according to communications received in mid-October, officials could not identify any particular third country as a potential destination for petitioner. Moreover, respondents concede that they have been unsuccessful in their attempts to remove petitioner to four different countries, and the fact that officials have been unsuccessful with their initial choices suggests that officials will have difficulty eventually finding a country that will accept petitioner.

The Court further concludes that respondents have not rebutted that showing by petitioner. In a declaration submitted by respondents, an immigration official states only that "DHS has attempted to procure Petitioner's removal to Canada, Guatemala, and Peru, with no success;" and that "ICE will continue its efforts to identify alternative countries to which Petitioner can be removed." The Court does not find such evidence to be sufficient, however. The declarant claims that officials have attempted to remove petitioner to three specific countries, but she does not describe those attempts at all. Thus, it is not clear whether requests were actually sent to those other countries, and if so, what responses were

4

received.  Nor does the declarant state when those "attempts" were made, and thus respondents have not shown that any efforts have been undertaken in the recent past. Neither respondents nor the declarant has identified any additional country that has been investigated or considered, or identified any country to which removal might be possible, with one exception – the declarant states that in September 2025 petitioner was served with a notice of an intent to remove him to El Salvador, and that on November 19 she sought an update within ICE concerning removal efforts to that country.  Those facts hardly demonstrate officials' diligence with respect to petitioner's removal, however, as the declarant then advised that El Salvador does not ordinarily accept a third-country removal if the alien lacks contacts there – a fact that officials should have known prior to serving the notice.  Respondents have not offered any evidence explaining why officials have not been able to undertake any additional efforts in petitioner's case.  *See Manago v. Carter*, 2025 WL 2841209, at *2-3 (D. Kan. Oct. 7, 2025) (citing similar facts in concluding that the respondents failed to rebut the petitioner's showing under *Zadvydas*).

In sum, respondents have not been able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials have failed in their undescribed "attempts" to remove petitioner to a third country, and even though they have seemingly made no additional efforts regarding other countries (other than one effort doomed to fail from the beginning), petitioner will nonetheless be removed to a third country in the reasonably foreseeable future.  Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision.  *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **December 12, 2025**.

IT IS THEREFORE ORDERED BY THE COURT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **December 12, 2025**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 2nd day of December, 2025, in Kansas City, Kansas.

/s/ John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge